**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| | : |
| | : |
| v. | : Criminal No.: 07-350-01 (PLF) |
| | : Sentencing: June 19, 2008 |
| | : |
| WILLIAM KING | : |

**MEMORANDUM IN AID OF SENTENCING**

Defendant, William King, through undersigned counsel,  respectfully submits the following memorandum in aid of sentencing.  Defendant submits that he is eligible for "safety valve" treatment; that his advisory guideline range should be 70 - 87 months; and that the Court can sentence him without regard to the statutory minimum sentence of 60 months.


**OFFENSE CONDUCT / PROCEDURAL BACKGROUND:**

In or about November 2007, officers of the Metropolitan Police Department received information that there was a quantity of drugs in Room 246 at the Budget Motel on New York Avenue.   Officers went to the Budget Motel to investigate.  When they knocked on the door of Room 246, Mr. King answered.  Monica Williams was also in the room at the time.  Mr. King let the officers in the room and agreed to answer their questions.  Mr. King immediately acknowledged that drugs were being used in the room.  When asked if marijuana was being used, he indicated "no - coke".  He was then asked if he had any guns.  He indicated that he did not own any guns, but acknowledged that there was a gun in a black bag in one of the drawers of a dresser.  A .32 caliber revolver, drugs, and drug paraphernalia were recovered from the black bag.

The police investigation revealed that the room was being paid for by someone other than Mr. King - an individual who referred to himself as Mr. King's brother. [See handwritten notes attached as Exhibit 1].   That individual was responsible for putting the bag with the drugs and

gun in the room;  was the person who sent the customers to the room; and was the person who retrieved the money.  Mr. King made little or no money from his involvement.  Mainly, he was able to support his crack addiction at the time.   In addition, Mr. King did not use the gun that was in the room.

Mr. King and Ms. Williams were both arrested.[1]   Mr. King was charged by complaint with unlawful possession with intent to distribute a detectable amount of cocaine base in violation of 21 U.S.C. 841.  He was detained pending his preliminary / detention hearing.   Mr. King, to his credit, quickly acknowledged his involvement in the offense and indicated a desire to plead guilty.  Within a week, there was a meeting with the government in an effort to work out a plea agreement.  Although those efforts were not successful, Mr. King never wavered regarding his desire to work out a plea in the case.  After the case was indicted, he continued his efforts to work out a plea agreement.  No motions were filed and no efforts were made to put the case on a trial track.  Through counsel, Mr. King's efforts were successful, and a plea agreement was reached.

On February 22, 2008, Mr. King pled guilty to a Criminal Information charging him with unlawful possession with intent to distribute 5 grams or more of cocaine base in  violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B)(iii).  A pre-sentence report ("PSR") was ordered and sentencing was set for May 9th.  However, when new counsel had to be appointed to represent Mr. King, sentencing was re-scheduled for June 19, 2008.

**ADVISORY SENTENCING GUIDELINE CALCULATIONS :**

Mr. King pled guilty to possession with intent to distribute 5 grams or more of cocaine base in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B)(iii).   The statutory penalty is 5 years to 40 years.  Mr. King accepted responsibility for 50.1 grams of cocaine base and 11.9 grams of

---

[1]  Ms. Williams was apparently taken to Superior Court.  Counsel does not know the outcome of her case.

- 3 -

heroin.  He also admitted to constructive possession of a gun at the time of the offense for purposes of the "gun bump" under the sentencing guidelines.  According to the pre-sentence report ("PSR"),  the total offense level is 29 and the criminal history category is I, making the advisory guideline range 87 - 108 months.   However, as discussed below, notwithstanding the "gun bump", defendant submits that he is eligible for "safety valve" treatment under U.S.S.G. §§ 5C1.2 and 2D1.1(b)(11).[2]  Thus the offense level should be reduced 2 levels, making the guideline range 70 - 87 months.  In addition, if the safety valve applies, the Court is able to sentence Mr. King without regard to the 60 month mandatory minimum sentence in this case.

Notwithstanding the agreed-upon 2 level gun bump, Mr. King is still eligible for the "safety valve" under U.S.S.G. § 5C1.2 because he meets the five criteria set forth in §5C1.2 and 18 U.S.C. § 3553(f)(1-5).   Specifically, counsel contends that: 1)  Mr. King does not have more than one criminal history point; 2) he did not use violence or threats of violence, and he did not possess a firearm or dangerous weapon *in connection with the offense*; 3) the offense did not result in death or serious bodily injury; 4) he was not an organizer, leader, manager, or supervisor of others in the offense;  and 5) he has or will provide the government the information necessary to satisfy the safety valve. [3]

The issue appears to turn on whether there is sufficient evidence that Mr. King possessed a firearm *in connection with the offense*.  Defendant submits that his admission that he constructively "possessed a loaded .32 caliber revolver .  .  .  at the time he committed this offense" does not foreclose "safety valve" treatment.   Possession at the time of the offense is different than possession *in connection with* the offense. Thus, the admission of possession, which was intended to satisfy the 2 level gun bump under §2D1.1(b)(1), does not necessarily

---

[2]   As of the filing of this memorandum, counsel does not know what position the probation department and the government are taking on this issue.

[3]    Prior counsel believes the 5th criteria has been satisfied.  However, if it has not been completed, it can still be satisfied prior to sentencing if the Court agrees that the other four criteria have been met.

- 4 -

preclude "safety valve" treatment under §§ 5C1.2 and 2D1.1(b)(11).

A number of circuits, including our circuit, have recognized that "possession" or co-conspirator liability for purposes of the gun bump enhancement is different than possession "*in connection with*" the offense, and therefore such an admission does not preclude a defendant from receiving the benefit of the safety valve provision.[4] See generally, In re Sealed Case, 105 F.3d 1460, 1462 (D.C. Cir. 1997); United States v. Figueroa-Encarnacion, 343 F.3d 23, 35 (1st Cir. 2003); United States v. Pena-Sarabia, 297 F.3d 983, 989 (10th Cir. 2002); United States v. Clavijo, 165 F.3d 1341, 1343 (11th Cir. 1999); United States v. Wilson, 114 F.3d 429, 432 (4th Cir. 1997); See also, United States v. Anderson, 452 F.3d 87, 89 (1st Cir. 2006) (Court agreed that defendant was eligible for safety valve, even though he admitted that there was a loaded gun in the house in which he sold drugs, and even though the gun bump enhancement also applied). Furthermore, in an unpublished opinion, this Circuit noted that it may be appropriate for the court to find that a defendant possessed weapons for purposes of the § 2D1.1(b)(9) enhancement, without precluding safety valve treatment under § 5C1.2. United States v. Washington, 62 Fed. Appx. 351, 353 (D.C. Cir. 2003) (unpublished).

In Mr. King's case, his admission regarding possession of the gun appears similar or analogous to the "constructive" possession and co-conspirator liability situations referred to above. Mr. King was a lower level participant in the offense. Although he was the one who arrested in the motel room that day, he was not the true owner of the drugs, and not the one most culpable in the offense.[5] More importantly, he was not the owner of the gun. Mr. King, who was

---

[4]    It is unclear to undersigned counsel under which theory Mr. King acknowledged "possession" for purposes of the gun bump.

[5]    Counsel believes the government is aware that Terry Williams was one of the more culpable individuals involved in the offense. [See, Exhibit 1]  Mr. Williams is currently being prosecuted in this Court in Case No. 08-90 (RJL), charging that on or about March 5, 2008, he possessed with intent to distribute cocaine base and heroin, the same drugs involved in this case. On information and belief, counsel also believes that the government is aware that Terry Williams was the owner of both the drugs and gun.. He is the one who asked Mr. King to stay in the hotel room for those few days to serve his customers.  Mr. King did not have any customers

- 5 -

honest with the police, told them that he did not own a gun, but that there was a gun concealed in the room.  He knew where the gun was, and directed the police to the gun.  There is no evidence he ever used the gun.  The gun was put there, and kept there, by the owner of the both the gun and the drugs.  It was stored in a bag with the drugs, where the defendant obviously saw it when he handled the drugs.  Thus, while there is sufficient evidence in the record supporting Mr. King's "possession" of the gun for purposes of the "gun bump", there is not sufficient evidence that it was *in connection with* his offense, and therefore safety valve treatment would be appropriate in his case.

Moreover, to deny safety valve treatment in this case will undermine the purpose of §§ 5C1.2 and 2D1.1(b)(11).  The safety valve provisions were promulgated to benefit less culpable defendants like Mr. King, by permitting them to avoid the often harsh consequences associated with the mandatory minimum sentences in drug cases.  See, In re Sealed Case (Sentencing Guidelines 'Safety Valve'), Supra at 1465; Pena-Sarabia, Supra at 988.

In summary, Mr. King is the type of less culpable, non-violent, first offender who should be relieved from the statutory minimum sentence.  He is a 58 year old man with virtually no criminal record.  He was involved largely to support his drug habit.  The drug activities were on-going in the motel room before Mr. King became involved.  The room was paid for by others.  The drugs and gun were no brought to the room by Mr. King, and not at his direction.  The customers were sent there by the owner of the drugs.  He was a low level worker who was paid in crack cocaine to support his habit.  He was not involved to make money.  As a result, since there was insufficient evidence that Mr. King possessed the gun *in connection with the offense,* he should be entitled to "safety valve" treatment in this case under U.S.S.G. § 5C1.2, and the corresponding 2 level reduction of the offense level pursuant to U.S.S.G. § 2D1.1(b)(11).

---

of his own, and was acting completely on the directions of Mr. Williams.  Mr. Williams has a prior narcotics (cocaine) conviction in Superior Court, Case No. F-3557-94.  He was also prosecuted before this Court in Case No. 05-004 for a narcotics violation, but the case was dismissed.

- 6 -

## DEFENDANT'S HISTORY AND CHARACTERISTICS :

William King is a 58 year old man who was born and raised in the Tryon, North Carolina area. He had a normal childhood , and a good relationship with his mother and his siblings when he was growing up.[6] He graduated high school in 1969 and enlisted in the Army while our country was still involved in the Vietnam War. He served in the military from 1969 until 1972, completing jump school and serving in the 82nd Airborne. He was honorably discharged in 1972.

Mr. King moved from North Carolina to this area in 1979 in an effort to try to reconcile with his wife, who had moved to Baltimore. During his time here, he has been a productive, contributing member of the community. He worked for D.C. Van Lines for about two years, before settling in with a job at the Parkway Guest House in Southeast Washington, D.C. He worked at the Parkway Guest House for about 15 years. He left Parkway to work for Banker's Courier Service, and then returned to Parkway. From 1998 to 2003, he worked for Talbert's Ice and Beverage. From 2004 until his arrest, he held a number of additional jobs, including work at several restaurants and hotels, and also had another stint at Talbert's Ice and Beverage in 2006 and 2007. In short, after serving his country from 1969 until 1972, he has always found employment and worked hard to support himself and his family.

Unfortunately, in 1983 Mr. King suffered serious injuries when he was struck by a car. He spent about a month in the hospital, and six months recovering. Although he made a full recovery, it was shortly after that accident that he was introduced to crack cocaine. Between 1985 and 2007 he used crack cocaine on occasion. However, in 2007 his crack use changed dramatically. Crack became readily available to him because one of his close friends was obtaining quantities of crack. He began to use it on a daily basis, and his addiction worsened. Eventually, he was persuaded to help distribute drugs from the motel room in order to support his worsening drug habit. He was primarily concerned with getting crack cocaine to support his

---

[6] Counsel would note that his father died when he was very young, and then his mother died when he was 18 years old.

- 7 -

habit, not with making money.  Clearly his judgment was significantly affected during that time.

Counsel submits that the way Mr. King has handled himself since his encounter with the police last November  says a lot about him as a person, and about his true character.  Unlike many individuals who come before this Court, Mr. King has been honest from the start.  He was cooperative from the moment the police first confronted him.  He let the officers in the room.  He answered their questions honestly - clarifying the type of drugs in the room, and directing them to the gun that was concealed in the dresser.  Within a week he agreed to delay his detention hearing in order to try to accept responsibility and work out a plea agreement.  He never requested a trial date or had his attorney file any motions in the case.  He simply wanted to accept responsibility, accept his punishment, and get back on the right path.  Early and unequivocal acceptance of responsibility is relatively rare in these cases, and usually is a good sign for rehabilitation and for a lower risk of recidivism.  That is particularly so for defendants in their 50s and 60s, like Mr. King.

In addition, Mr. King has tried to be as productive as possible with his time in jail.  He has agreed to work as a cook in the kitchen at the Correctional Treatment Facility.  He works six days a week.  The work day in the kitchen is usually long and tiring.  He works hard and is well-regarded by the correctional staff.  Mr. King finds it a rewarding way to pass his time in a positive way.  In short, from the beginning he has taken a positive approach in addressing his criminal problem, and in starting to put his life back together, which should help him continue in a positive way under the supervision of the Probation Department when he is released.

Mr. King also distinguishes himself from other defendants in another important way.  He has no juvenile arrests, and virtually no adult criminal record.  His only prior contact with the criminal justice system was nearly 20 years ago, and resulted in a Probation Before Judgment

- 8 -

("PBJ"), which is not treated as a conviction in Maryland.[7] See, Maryland Criminal Procedure Article, § 6-220.  He is not on probation or parole, and is a good candidate for continued rehabilitation under the watchful eyes of the Probation Department.

**CONCLUSION:**

United States v. Booker 125 S.Ct. 738 (2005) marked the end of twenty years of mandatory federal sentencing guidelines.  Thus the guideline range is now advisory, and the sentence must be imposed in accordance with the factors set forth in 8 U.S.C. 3553(a), taking into account the sentencing guideline range.  The import of 18 U.S.C. 3553(a) is that the Court should impose a sentence sufficient, but not greater than necessary to comply with the purposes of sentencing set forth in the statute.

Mr. King is a person who has contributed to society most of his life, starting with his service to our country during a time of war.  While many young men found ways to avoid military service during that time, he enlisted in the Army.  Since completing his military service, he has always found work to support himself.  His offense conduct is directly related to his recent addiction to crack cocaine - an addiction fueled by the individual(s) who got him involved in the offense.  Those individuals, not Mr. King, were profiting from the drug dealing.

Although the offense is a very serious offense, the other 3553(a) factors seem to favor a sentence which focuses on rehabilitation, rather than on the punishment.  Considering Mr. King's history and characteristics; his early and unequivocal acceptance of responsibility; and his

---

[7]    That case was in the District Court for Prince George's County, Maryland.  Counsel notes that there is an outstanding objection to the inclusion of that case as a prior conviction, but counsel does not know the probation department's position on the objection as of the filing of this memorandum.  Even though no criminal history points were assessed , defendant is requesting that it be removed from the convictions section and that the factual allegations be deleted or modified because they are inaccurate and unreliable, and because they could adversely affect Mr. King's designation and treatment in the Bureau of Prisons.

- 9 -

continued post-arrest rehabilitation and adjustment, it does not appear that more punishment is necessary to deter Mr. King from further criminality or to protect the community from further crimes by him.  In addition, Mr. King's sentence should recognize that his circumstances are far different than those of many  defendants appearing in this court.  His sincere and honest responses to the police, and the responsibility he showed in promptly resolving the charges, show that he has character, and that he understands right from wrong.  He knows he was wrong, and promptly took the appropriate steps to put this matter behind him.  Mr. King has demonstrated by his actions that he is not a person who needs a lengthy prison sentence to learn his lesson.

In addition to the normal sentencing factors, the Pickett  factors also suggest that a sentence below the otherwise applicable guideline range would be reasonable under the circumstances in this case.[8]  See, United States v. Pickett, 475 F. 3d 1347 (2007),  In Pickett, the Court of Appeals observed that the crack cocaine guideline in U.S.S.G. § 2D1.1 does not permit individualized consideration for each offender. Pickett, Supra at 1354.   In addition, the opinion recognized that many retail crack cocaine dealers receive longer sentences than the wholesale drug distributors who supply the powder cocaine from which crack is produced, which often leads to disparate treatment and anomalous results.  The result has been that the strict application of the crack cocaine sentencing guidelines leads to unreasonable sentences.  The D.C. Circuit found that:

---

[8]  Defendant is aware that the Probation Department used the November 2007 Sentencing Guidelines which have a 2 level downward adjustment for the cocaine base guideline.  However, under Pickett, a greater variance may still be appropriate in some cases.  Thus in considering an appropriate sentence under 18 U.S.C. 3553, counsel submits that it would be  reasonable and appropriate to determine a lower guideline range as a reasonable point of reference separate from the applicable cocaine base guideline range.

- 10 -

In terms of the sentencing factors of Sec. 3553(a), the Commission thus believes that its Guideline for crack distributors generates sentences that are "greater than necessary," exaggerates "the seriousness of the offense" of crack trafficking, does not "promote respect for the law," and does not "provide just punishment for the offense." 18 U.S.C. Sec. 3553(a), (a)(2)(A).  The Commissions's self-assessment does not rest  on the particulars of any one offender.  The sentencing factors just mentioned, as well  as Sec. 3553(a)(6), which deals with "unwarranted sentence disparities" are not entirely confined to the individual characteristics of the particular defendant.  ***See, United States v. Simpson*, 430 F.3d 1177, 1186 (D.C.Cir. 2005).**  It therefore seems to us beyond doubt that the district court erred in refusing to evaluate whether sentencing Pickett in accordance with Guidelines 2D1.1,and its 100-to-1 ratio, would effectuate the purposes of sentencing set forth in Sec 3553(a)."  **[475 F.2d at 1354]**

Even with the recent amendment to the Federal Sentencing Guidelines for crack cocaine cases,  the resulting guideline range is often unreasonable under the circumstances of a particular case.  Thus it is still instructive to look at the corresponding guideline range for similar quantities of cocaine powder.   Mr. King pled guilty to 50.1 grams of cocaine base. The offense level for 50.1 grams of powder cocaine is level 16.  With a 2 level gun bump and a 3 level reduction for acceptance of responsibility, the guideline range is 18 to 24 months  (based on a total offense level of 15 and a criminal history category I), which is nearly 80% below the applicable cocaine base guideline range.

Counsel submits that consideration of the <u>Pickett</u> factors would be reasonable and appropriate in Mr. King's case.   The evidence suggests that he was a lower level dealer, and that he was involved primarily to support his daily crack addiction.  He was set up in the motel room by the supplier, who used to pay for the room and collect the monies from Mr. King.  He made very little money, and was not a major player.  He is not charged with any  violence.   He is a 58 year old man with a military background, and virtually no prior criminal record. Thus, applying the current crack cocaine guideline exaggerates the seriousness of his offense, does not provide "just" punishment, and does not promote respect for the law.  See, <u>Pickett</u>, Supra.

- 11 -

While Mr. King is not proud of his involvement in the conduct which brings him before this Court, he is proud of his efforts to quickly resolve this case and attempt to put his mistakes behind him. He has demonstrated that he has a considerable amount of potential, and that he recognizes the need to do things right. His moral compass now seems to be pointed in the right direction. He is committed to finding work and getting back on the right path when he is released.

In short, counsel submits that a lengthy prison sentence is not necessary to provide deterrence or to protect the community from further crimes of this defendant, particularly since studies show that people in their 50s and 60s are less likely to be recidivist. In addition, in some cases a lengthy prison sentence simply does not serve as just punishment, and does not promote respect for the law. Thus counsel submits that a consideration of the totality of factors in this case, including the seriousness of the offense, the defendant's history and characteristics, the Pickett factors, and his early and complete acceptance of responsibility, supports the imposition of a significantly reduced sentence - one which is well below 60 months. Mr. King will still be under supervision by the Court and the United States Probation Department until he is in his 60s under any sentence the Court imposes. Thus such a sentence is reasonable and sufficient, and best satisfies the sentencing goals enumerated in 18 U.S.C. 3553(a).

WHEREFORE, for all the reasons outlined above, counsel respectfully urges the Court to find that Mr. King is eligible for the safety valve, and consider a sentence of time served, with halfway house, community service, and other appropriate conditions. While some might consider such a sentence to be too lenient, there are many individuals who believe that service in the military, particularly during time of war, should entitle an individual to substantial consideration for a first mistake - one he waited until he was 58 year old to make. In the alternative, counsel would request that the Court impose a sentence significantly below the

- 12 -

otherwise applicable guideline range, and recommend placement at an RDAP facility within the Bureau of Prisons.

In addition, counsel respectfully requests that the Court not impose a fine in this case. Mr. King has no assets, and a fine will simply add financial pressures, which are sure to hinder his rehabilitation efforts and which would therefore be counterproductive.

Respectfully submitted,

/s/

Howard B. Katzoff (Bar # 348292)
717 D Street, NW Suite 310
Washington, D.C. 20004
(202) 783-6414
Attorney for William King

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing Memorandum was electronically served on Charles Floyd, Esquire, Office of the United States Attorney, 555 Fourth Street, N.W., Washington, D.C. 20530, and U.S Probation Officer Kelly Kraemer-Soares, 333 Constitution Avenue, N.W., Washington, D.C. 20001, this  6th  day of ____June____, 2008.

/s/
Howard B. Katzoff

11/9/07

Budget motor Inn
1931 hrs.  T.O.E.

Desk Clerk
Desai Jayesh Kumar Dolatrai
3820  DOB: 2-26-57
#214  1415 New York Avenue
NE.  Washington DC
202  526-6103

* His Brother Terry Williams
come's and pays
many times.

5-6 days he has
been here.

DEFENDANT'S
EXHIBIT
# 1
SENTENCING