IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v. : | |
| : | CRIMINAL NO. 07CR350 |
| : | |
| WILLIAM E. KING : | Next Date:   June 19, 2008 |
| : | |
| Defendant. : | |
| _____ : | |

**UNITED STATES' MEMORANDUM IN AID OF SENTENCING**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, hereby respectfully submits its Memorandum in Aid of Sentencing, recommending that defendant King be sentenced, at a point within the applicable Sentencing Guidelines range that this Court deems appropriate, in this case. In support thereof, the United States respectfully states the following:

**Background**

1. Defendant King's conduct pertaining to this plea agreement is set forth in the proffer of evidence signed and accepted by defendant King on February 22, 2008.

2. On November 9, 2007, officers of the Metropolitan Police Department (MPD) received reliable information that an individual named "Bill" was selling heroin and "crack" cocaine from room 246 of the Budget Motel located at 1615 New York Avenue, NE, in the District of Columbia. The officers also received reliable information that "Bill" had a gun as well. Based on this information, the officers went to room 246 at the Budget motel, knocked on the door and identified themselves as police officers. Defendant King eventually came to the door and allowed the officers to enter his motel room. Defendant King admitted to using "crack" cocaine and marijuana in the motel room and took out from inside the night stand drawer a plate

with white powder residue, a razor and a playing card.  The officers asked him if there was a gun in the room.  Defendant King stated that there was and told them it was in a black bag inside the bottom dresser drawer.  The officers retrieved the bag and found a fully loaded .32 caliber handgun, an additional 29 rounds of .32 caliber ammunition, 14 rounds of 9mm ammunition, a can that contained "crack" cocaine base (later determined by DEA lab work to be in the amount of 50.1 grams), and heroin (later determined by DEA lab work to be in the amount of 11.9 grams).  In the bag, the officers also found two digital scales, razor blades, cutting materials, and numerous empty ziplock bags.  Defendant King was placed under arrest, and he was subsequently charged with a three-count indictment.  Count One charged the defendant with Possession With Intent to Distribute 5 Grams or More of Cocaine Base, in violation of 21 USC § 841(a)(1) and (b)(1)(A)(iii).  Count Two charged defendant King with Possession With Intent to Distribute Heroin, in violation of 21 USC § 841(a)(1) and (b)(1)(C).  Count Three charged defendant King with Using, Carrying, and Possessing a Firearm During a Drug Trafficking Offense, in violation of 18 USC § 924(c)(1).

3.     On February 21, 2008, a single count Superseding Information was filed against defendant King, charging him with Possession With Intent to Distribute 5 Grams or More of Cocaine Base, in violation of 21 USC § 841(a)(1) and (b)(1)(A)(iii).

**Statutory Penalties**

4.     According to his plea agreement, the defendant agreed the conviction, pursuant to 21 USC § 841(a)(1) and (b)(1)(A)(iii), exposed him to not less than five nor more than 40 years imprisonment, a term of at least four years supervised release, a fine of not more than $2,000,000, and a special assessment of $100.

## Sentencing Guidelines

4.      The Federal Sentencing Guidelines calculation embodied in the Presentence Report places the defendant's base offense level at 30.  The PSR also allows a two-point increase as a specific offense characteristic for the possession of a firearm under USSG § 2D1.1(b)(1).  The PSR also correctly affords the defendant a three-point reduction in his guidelines calculation for acceptance of responsibility, which diminishes his total offense level to 29.  The PSR calculates the defendant's criminal history score as 0 and the criminal history category as I.  The total offense level therefore is 29, and the Guidelines range for the defendant is 87 to 108 months of imprisonment.

## Sentencing Recommendation

5.      The Government recommends that the Court sentence defendant King within the predetermined USSC federal sentencing guidelines for the defendant's total offense level of 29.  The USSC determines that an offense of this level should carry a term of imprisonment between 87 months and 108 months.

6.      When determining the appropriate sentence, the district court should consider all of the applicable factors set forth in 18 U.S.C. § 3553(a).  See Gall v. United States, 128 S. Ct. 586 (2007).  These factors include "the nature and circumstances of the offense and the history and characteristics of the defendant" (18 U.S.C. §3553(a)(1)); the need for the sentence imposed to reflect the seriousness of the offense, to provide just punishment for the offense, to afford adequate deterrence to criminal conduct, to protect the public from further crimes of the defendant, and to provide the defendant with needed correctional treatment (18 U.S.C. § 3553(a)(2)); the Sentencing Guidelines and related Sentencing Commission policy statements

(18 U.S.C. § 3553(a)(4) and (a)(5)); and the need to avoid unwarranted sentence disparities (18 U.S.C. § 3553(a)(6)).

7. This sentence recommendation is within the Guidelines range. In <u>United States v. Booker</u>, 125 S. Ct. 738 (2005), the Supreme Court held that the mandatory application of the United States Sentencing Guidelines violates the Sixth Amendment principles articulated in <u>Blakely v. Washington</u>, 124 S. Ct. 2531 (2004). As a consequence, the Court invalidated the statutory provision that made the Guidelines mandatory, 18 U.S.C. § 3553(b)(1). <u>Booker</u>, 125 S. Ct. at 756. Nonetheless, a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range. See <u>Gall</u>, at 590 ("As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark"). The Guidelines are the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions. See <u>Rita v. United States</u>, 127 S. Ct.2456 (2007); See also United States Sentencing Comm'n, <u>Supplementary Report on the Initial Guidelines and Policy Statements</u> 16-17 (1987); see also 28 U.S.C. § 994(m) (requiring Commission to "ascertain the average sentences imposed . . . prior to the creation of the Commission"); Comprehensive Crime Control Act of 1984, S. Rep. No. 98-225, at 168 (Commission should produce a "complete set of guidelines that covers in one manner or another all important variations that commonly may be expected in criminal cases"). In addition, the Sentencing Commission has continued to study district court and appellate sentencing decisions and to "modify its Guidelines in light of what it learns." <u>Booker</u>, 125 S. Ct. at 766-67 (the Sentencing Commission will continue "collecting information about actual district court sentencing decisions . . . and revising the Guidelines accordingly").

8. The Guidelines themselves are designed to calculate sentences in a way that implements the considerations relevant to sentencing as articulated in § 3553(a). Any Guidelines calculation is based on the individual characteristics of the offense and the offender, as required by § 3553(a)(1). The Guidelines themselves thus seek to implement – in a fair and uniform way – the offense specific characteristics that, themselves, comprise the "individualized assessment" the Supreme Court commends in Gall. See Gall, at 590.

9. The Government submits that the Guidelines range is accurate. The Government submits that this recommendation within the Guidelines range is reasonable, considering, among other things, the harm to the community that was caused by defendant King's illegal drug trafficking. In this case, defendant King not only possessed large amounts of illegal narcotics with the intention of distribution, but he also possessed a fully loaded .32 caliber handgun with nearly 30 rounds of .32 ammunition and nearly 15 rounds of 9 mm ammunition. Considering gun violence is the source of a large amount of crime in this City and of violence against its citizens, and the fact that he knew he was not legally entitled to have a gun, especially in its use as an instrument of drug trafficking, the defendant's conduct here is reprehensible. It is vital that the Court send a message to both the defendant and the community that distribution of illegal narcotics, especially in a manner that involves firearms which pose an even greater threat to the safety of the community, will not be tolerated.

10. It should also be noted that defendant King has already received a substantial benefit for his early acceptance of responsibility. Specifically, defendant King received a three-point decrease in his offense level under the Guidelines. The Government can find no reason why the sentencing of the Court should fall outside of these Guidelines, especially below them, considering the leniency of the plea agreement which included the dismissal of two other charges

by the Government. Sentencing defendant King within the predetermined Guidelines range would serve the interests of the community and give both the Government and the defendant the benefit of the bargain negotiated.

## CONCLUSION

WHEREFORE, based upon the above, and the information reflected in the Presentence Report, the United States respectfully recommends a sentence, within the Guidelines range that this Court deems appropriate in this case.

Respectfully,

JEFFREY A. TAYLOR
UNITED STATES ATTORNEY

By: _____/s/_____
CHARLES NEIL FLOYD
ASSISTANT UNITED STATES ATTORNEY
AR Bar Number 97-219
United States Attorney's Office
555 Fourth Street, N.W., Room 4243
Washington, D.C. 20530
Phone: (202) 305-2195
e-mail: charles.floyd@usdoj.gov